WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. CV-99-1591-PHX-RCB(LOA) |
| | ) | |
| vs. | ) | O R D E R |
| | ) | |
| Castulo Soto-Valdez, | ) | |
| | ) | |
| Defendant/Movant. | ) | |
| _____ | ) | |

### *Introduction*

Currently pending before the court is the Report and Recommendation ("R & R") of the Honorable United States Magistrate Judge Lawrence O. Anderson ("the Magistrate Judge"), wherein he recommends: (1) denying movant's Motion for Relief from Judgment under Rule 60(b)(6) (Doc. 1); granting movant's Motion to Supplement his Rule 60(b)(6) (Doc. 11); and denying a Certification of Appealability ("COA") and leave to proceed *in forma pauperis* on appeal. R & R (Doc. 12) at 7:16-24.  Movant *pro se,* Castulo Soto-

Valdez ("Valdez"[1]), timely objected to the R & R. Also pending before the court is the movant's second motion to supplement (Doc. 14), based upon, *inter alia*, two cases decided after the issuance of the R & R.  The final pending matter is the movant's "Motion for Disposition" (Doc. 18).

There being no objections to the R & R's factual recitation, the court adopts that background as if fully set forth herein.  <u>See</u> R & R (Doc. 12) at 1:18-3:22.  For convenience though, the court reiterates those facts bearing most heavily on the pending R & R.  The facts relevant to plaintiff's motion to supplement, filed after the issuance of the R & R, also are set forth below.

Movant Valdez is serving a 360 month sentence for a conviction for conspiring to distribute and possess with intent to distribute methamphetamine.  The movant, through his then attorney, Colin Jon Kooyumjian, appealed that conviction.  Although it affirmed the movant's conviction, the Ninth Circuit specifically, "decline[d] to consider [Valdez's] ineffective assistance of counsel [("IAC")] claim," on the basis that it "should be resolved in a separate habeas corpus proceeding." <u>United States v. Soto-Valdez</u>, 191 F.3d 462, 1999 WL 701896, at *1 (9th Cir. 1999) (unpublished).

### ***Background***

### ***I. Habeas Corpus Motion***

Presciently, just a few days prior to the issuance of

---

[1]     When referring to him by name, as does the movant, the court will refer to Mr. Soto-Valdez as Valdez.

1  that decision, on September 3, 1999, attorney Kooyumjian,

2  filed a motion under 28 U.S.C. § 2255 to Vacate, Set Aside,

3  or Correct sentence, asserting an IAC claim and prosecutorial

4  misconduct.  R & R (Doc. 12) at 3:3-9 (citation omitted).

5  The IAC claim was predicated upon trial counsel's alleged

6  failure to listen to and obtain a voice analysis of wiretaps

7  purporting to be conversations between him and other

8  conspirators.  See CR[2] Doc. 1210 at 1:26-2:1.

9      After additional briefing and an evidentiary hearing on

10 the IAC claim, the Magistrate Judge recommended denying the

11 section 2255 petition in its entirety.  CR Doc. 1206.

12 Accepting the R & R, on January 8, 2001, this court denied

13 that petition; dismissed the case and entered judgment

14 accordingly.  See CR Docs. 1210 and 1211; and Mot. (Doc. 1),

15 exh. A thereto at 9.  Attorney Kooyumjian timely appealed.

16 R & R (Doc. 12) at 3:15-16 (citation omitted); see also id.,

17 exh. D thereto at 13.  Shortly thereafter, on February 28,

18 2001, this court filed a COA and an order to proceed in forma

19 pauperis on appeal, finding that the movant "ha[d] made a

20 substantial showing of the denial of a constitutional right

21 with respect to the . . . [IAC] issue[] . . . , and no other

22 issue."  Mot. (Doc. 1), exh. C thereto at 12.  Ultimately,

23 because the movant did not file an opening brief, the Ninth

24 Circuit dismissed his appeal on March 6, 2002.  Mot. (Doc.

25 1), exh. F thereto at 17.

26 . . .

27

28
───────────────
    [2]    "CR" refers to the underlying criminal case, CR 95-320-PHX-RCB,
and items docketed therein.

## II.   *"Rule 60(b)(6)" Motion*

Slightly more than nine years later, on February 7, 2011, the movant filed his self-styled "Motion for Relief from Judgment under Rule 60(b)(6)[.]" Mot. (Doc. 1) at 1 (emphasis omitted).  The movant advances two reasons purportedly establishing "extraordinary circumstances" warranting relief under that Rule.  Only one is relevant at this juncture.[3]  In particular,  the movant argues that attorney Kooyumjian "'abandoned'" him by not timely filing an opening brief in the Ninth Circuit, resulting in the dismissal of his appeal, despite the issuance of a COA by this court as to movant's ICA claim.  Id. at 3.  In his Rule 60(b)(6) motion, the movant is seeking to have the court vacate the judgment and order denying his section 2255 motion; "reopen the § 2255 proceedings and reschedule a renewed evidentiary hearing[;]" and appoint counsel to represent him at that hearing.  Id. at 6.  Alternatively, the movant requests that the court vacate that judgment and "reenter [it] providing [him] with a renewed direct appeal from the denial of his § 2255 motion." Id.

The United States counters that the court should deny the pending motion because the Ninth Circuit appeal divested this court of jurisdiction.  Further, the United States argues

---

[3]     After the respondent submitted evidence establishing that attorney  Kooyumjian was eligible to practice law during the section 2255 proceedings,  the movant abandoned his claim that Kooyumjian was not authorized to practice law during that time.  See  R & R (Doc. 12) at 4:22-23, n. 2.  It was not until much later, in 2005, when Kooyumjian became ineligible to practice law in California and then later, on January 14, 2010, he was disbarred for failing to pay an arbitration award.  Id. at 4:24-25, n. 2.

1  that this motion is untimely because it was not brought

2  within a "reasonable time" as Rule 60(c)(1) requires.

3       The movant retorts that this court "retains jurisdiction

4  over the § 2255 proceedings" because "the integrity of the

5  habeas proceedings" was "undermined[.]"  Reply (Doc. 10) at 3

6  and 5.  According to the movant, that occurred when, although

7  this court had issued a COA as to the ICA claim, the Ninth

8  Circuit dismissed the appeal because his lawyer did not file

9  an opening brief.  As a result, the movant maintains that he

10 was deprived of the opportunity to pursue his IAC claim on

11 appeal.

12 ***III.  R & R***

13      Rule 60(b) may not be used as a vehicle for circumventing

14 "the requirement that a successive habeas petition be

15 precertified by the court of appeals as falling within an

16 exception to the successive-petition bar." Gonzalez v. Crosby,

17 545 U.S. 524, 531, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005)

18 (citing § 2244(b)(3)).[4]  Accordingly, the threshold issue is

19 whether, under  Gonzalez, the movant's Rule 60(b)(6) motion is

20 in fact a disguised § 2255 motion.  See Washington, 653 F.3d

21 at 1062; United States v. Buenrostro, 638 F.3d 720, 722 (9th

22 Cir. 2011).  Reasoning that "[u]nder *Gonzalez*, Movant's

23 'assertion that his post-conviction counsel gave him

24 ineffective assistance in connection with his § 2255 motion

25 ───────────────────

26      [4]   "Although *Gonzalez* was limited to § 2254 cases, 545 U.S. at 529
   n. 3, 125 S.Ct. 2641, [the Ninth Circuit] ha[s] held that its analysis is
27 equally applicable to § 2255 cases[]" such as the present one.  See United
   States v. Washington, 653 F.3d 1057, 1062 n. 6 (9th Cir. 2011) (citation
28 omitted), cert. denied, --- U.S. ----, 132 S.Ct. 1609, 182 L.Ed.2d 214
   (2012).

does not go to the integrity of the habeas proceedings but, in effect, asks for a second chance to have the merits determined favorably[,]'" the Magistrate Judge found the movant's Rule 60(b)(6) motion to be "a disguised § 2255 motion[.]"  R & R (Doc. 12) at 6:10-15 (quoting U.S. v. Bahna, 2010 WL 491658, * 3 (C.D.Cal, Nov. 24, 2010)).  On that basis, the Magistrate Judge recommended dismissal of the Rule 60(b)(6) motion for lack of jurisdiction "to consider the merits . . . absent authorization from the Ninth Circuit Court of Appeals pursuant to 28 U.S.C. § 2255(h)."  Id. at 7:2-4 (citations omitted).

During the pendency of the movant's 60(b)(6) motion before the Magistrate Judge, the Supreme Court decided Maples v. Thomas, --- U.S. ---, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012), holding "that abandonment by post-conviction counsel could provide cause to excuse procedural default of a habeas claim."  Stokley v. Ryan, 705 F.3d 401, 403 (9th Cir. 2012) (citation omitted).  Shortly after the issuance of Maples, the movant filed a motion "urg[ing] the [Magistrate Judge] to consider" Maples as an "intervening . . . decision . . . right on point with" his case.  Mot. (Doc. 11) at 2.  The Magistrate Judge found that "Maples does not change the fact that the Movant's claim of ineffective assistance of § 2255 counsel is not cognizable in a Rule 60(b)(6) motion."  R & R (Doc. 12) at 7:11-12.  Nonetheless, the Magistrate Judge recommended granting the motion to supplement "to the extent that the Court considered whether Maples impacts the Rule 60(b)(6) motion."  Id. at 7:13-14.
. . .

*IV.*  *Objections*

    Objecting to the R & R, movant Valdez directly challenges
"the Magistrate's finding that [the movant's] Rule 60(b)(6)
motion is 'a disguised § 2255 motion[.]'" Obj. (Doc. 13) at 2.
Arguing that under Gonzalez, his Rule 60(b)(6) motion "does
not challenge the merits of the judgment denying habeas
relief[,] nor does it raise a new claim[,]" the movant
maintains that this court "has jurisdiction to grant the
requested relief." Id. at 5.  In his objections, the movant
narrows the scope of relief which he is seeking.  Now, he is
seeking only what he originally termed his alternative form of
relief, *i.e.* vacatur of the judgment denying his section 2255
motion; "reent[ry]" of that judgment, which the movant
believes would "allow [him] to file a timely Notice of Appeal
and take a new appeal to which he is entitled." Id. at 6.

    Additionally, the movant broadly contends that this court
has the authority under the All Writs Act, 28 U.S.C. § 1651,
to provide the requested relief, but he does not elaborate.
Id. at 6, footnote.  "The All Writs Act authorizes federal
courts to issue all writs necessary and appropriate in aid of
jurisdiction and agreeable to usages and principles of law.
The writs are extraordinary writs and as such should be
reserved for really extraordinary causes." Samson v. NAMA
Holdings, LLC, 637 F.3d 915, 936 n. 93 (9th Cir. 2011)
(internal quotation marks and citation omitted).

    Insofar as his motion to supplement is concerned, the
movant's objections include a selective quote from Maples, but
nothing more.

1                              *Discussion*

2  *I. Report & Recommendation*

3           *A.   Standard of Review*

4          The movant's specific objection to the finding that his

5  Rule 60(b)(6) motion is a disguised section 2255 motion

6  requires de novo review.  <u>See</u> 28 U.S.C. § 636(b)(1) ("A judge

7  . . . shall make a de novo determination of those portions of

8  the report or specified proposed findings or recommendation to

9  which objection is made."); <u>see also</u> <u>Wang v. Masaitis</u>, 416

10 F.3d 992, 1000 n. 13 (9th Cir. 2005) (citation omitted) ("Of

11 course, *de novo* review of a R & R is only required when an

12 objection is made to the R & R[.]"); <u>United States v. Reyna-</u>

13 <u>Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003) emphasis in

14 original) (Section  636(b)(1) "makes it clear that the

15 district judge must review the magistrate judge's findings and

16 recommendations de novo *if objection is made*, but not

17 otherwise.")  In conducting such a review, "[a]lthough a de

18 novo hearing is not necessary, the district court must arrive

19 at its own independent conclusion about those portions of the

20 magistrate judge's findings or recommendations to which a

21 party objects." <u>Olson v. Lemos</u>, 2008 WL 782724, at *1

22 (E.D.Cal. 2008) <u>Id</u>. (citing <u>United States v. Remsing</u>, 874 F.2d

23 614, 616 (9th Cir. 1989)).  Thus, as it must, this "reviewing

24 court [is] *not* defer[ring] to the [Magistrate Judge's] ruling"

25 that the movant's Rule 60(b)(6) motion is a disguised section

26 2255 motion, "but [is] *freely consider*[*ing*] *the matter anew*,

27 as if no decision had been rendered below." <u>See</u> <u>Dawson v.</u>

28 <u>Marshall</u>, 561 F.3d 930, 933 (9th Cir. 2009) (internal

quotations and citation omitted) (emphasis added).

### B. Jurisdiction

#### 1. Affect of Appeal

Based solely upon Moroyoqui v. United States, 570 F.2d 862 (9th Cir. 1977), the United States contends that "[b]ecause of the Appeal, this Court is without jurisdiction to hear this matter." Resp. (Doc. 3) at 4:10-11. This argument is flawed. Critically, the United States is overlooking the Ninth Circuit's dismissal of the movant's appeal well before the filing of the present motion. Admittedly, "'[t]he filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal[.]'" Small ex rel. NLRB v. Operative Plasterers' & Cement Masons' Int'l Assoc., 611 F.3d 483, 489 (9th Cir. 2010) (quoting Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam)). However, on March 6, 2001, nearly ten years prior to the filing of the pending motion, the Ninth Circuit dismissed the movant's appeal and issued the mandate, thus restoring jurisdiction to this court. See Delman v. Barclay Hotel, LLC, 2009 WL 424345, at *2 (C.D.Cal. Feb. 18, 2009) (citing Sgaraglino v. State Farm Fire & Cas. Co., 896 F.2d 420, 421 (9th Cir. 1990) ("[O]nce an appellate mandate is issued, the district court reacquires jurisdiction.")

Primarily because of that dismissal, the United States fares no better by relying upon Moroyoqui. Basically, Moroyoqui stands for the proposition that once a petitioner

files an appeal of an appealable order, such as a double

jeopardy claim, that filing "divests the district court of

jurisdiction to proceed to trial." United States v. Bhatia,

2007 WL 2795066, at *1 (N.D.Cal. Sept. 26, 2007) (citing,

inter alia, Moroyoqui, 570 F.2d at 864). Obviously, Moroyoqui

has no place in this court's jurisdiction analysis where the

appeal has been dismissed and the mandate issued. Despite

these shortcomings in the United States' argument, as will

soon become evident, the court agrees that it lacks

jurisdiction to entertain the movant's Rule 60(b)(6) motion,

but for entirely different reasons than the United States

advances.

### 2.  *Second or Successive Petition?*

The Anti-Terrorism and Effective Death Penalty Act of

1996 ("AEDPA") generally limits petitioners to one section

2255 motion. Thus, a petitioner "may not bring a 'second or

successive motion' unless . . . the exacting standards of 28

U.S.C. § 2255(h)[]"[5] are met. Washington, 653 F.3d at 1059.

To avoid having to comply with "the exacting standards" of

section 2255(h), "petitioners often attempt to characterize

their motions in a way that will avoid the strictures of" that

statute. Id. For example, as did Valdez, a petitioner may

"characterize [his] pleading as being a motion under Rule

---

[5]     "This section provides that such a motion cannot be considered unless it has first been certified by the court of appeals to contain either '(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense,' or '(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.'" Washington, 653 F.3d at 1059 (quoting 28 U.S.C. § 2255(h)).

1  60(b) . . . , which 'allows a party to seek relief from a

2  final judgment, and request reopening of his case, under a

3  limited set of circumstances,' . . . , including, as relevant

4  here, that extraordinary circumstances exist warranting relief

5  under subsection six of that Rule.  See id. (quoting Gonzalez,

6  545 U.S. at 528, 125 S.Ct. 2641).

7      In that situation, it is incumbent upon the court to

8  decide whether the movant is bringing a legitimate Rule 60(b)

9  motion or whether the motion "should be treated as a disguised

10 § 2255 motion."[6]  See id. at 1063 (citation omitted).  "Rule

11 60(b) has an unquestionably valid role to play in habeas

12 cases[,]"  Gonzalez, 545 U.S. at 534, 125 S.Ct. 2641; hence, a

13 court has jurisdiction to entertain a legitimate Rule 60(b)

14 motion.  At the same time, however, a court lacks jurisdiction

15 to entertain a disguised section 2255 motion unless the movant

16 "me[e]t[s] the stringent standard for presenting a second or

17 successive § 2255 motion."  Washington, 653 F.3d at 1065

18 (citing 28 U.S.C. § 2255(h)); see also United States v. Allen,

19 157 F.3d 661, 664 (9th Cir. 1998) (district court lacked

20 jurisdiction to consider merits of petitioner's claim because

21 he did not "request the requisite certification" from the

22

23      [6]    As the Ninth Circuit astutely observed in Harvest v. Castro, 531
   F.3d 737 (9th Cir. 2008):

24

25           If the motion seeking relief from the judgment
            is, in reality, a successive petition, the motion
            would be inconsistent with the [AEDPA]. . . .
26          Like the other Civil Rules, Rule 60 applies only
            to the extent that [it is] not inconsistent with
27          any statutory provisions or [the habeas] rules[.]

28 Id. at 745 n. 5 (internal quotation marks and citations omitted).

1  Ninth Circuit prior to filing his § 2255 motion, raising a
2  successive claim).

3       That said, "the Supreme Court has not adopted a bright-
4  line rule for distinguishing between a bona fide Rule 60(b)
5  motion and a disguised second or successive § 2255 motion[.]"
6  Id. at 1060.  Rather, in Gonzalez, the Supreme Court explained
7  that "when a Rule 60(b) motion attacks . . . some defect in
8  the integrity of the federal habeas proceedings[,]" such as
9  "[f]raud on the federal habeas court[,]" it is a valid Rule
10 60(b) motion.  Gonzalez, 545 U.S. at 532 and 532 n.5, 125
11 S.Ct. 2641.  A "defect in the integrity of the federal habeas
12 proceeding" can also be found in a "Rule 60(b) motion
13 contending that the district court erred in making a
14 procedural ruling, such as 'failure to exhaust, procedural
15 default, or statute-of-limitations bar,' that actually
16 'preclude[s] a merits determination.'"  Washington, 653 F.3d
17 at 1063 (quoting Gonzalez, 545 U.S. at 532 n. 4, 125 S.Ct.
18 2641).  So, for example, in Gonzalez, where the petitioner
19 challenged the district court's ruling that his habeas
20 petition was time-barred, the Supreme Court held that his Rule
21 60(b) motion was not the equivalent of a second or successive
22 § 2254 petition.

23      However, "if the [purported Rule 60(b)] motion presents a
24 'claim,' i.e., 'an asserted federal basis for relief from a
25 . . . judgment of conviction,' then it is, in substance, a new
26 request for relief on the merits and should be treated as a
27 disguised § 2255 motion."  Id. (quoting Gonzalez, 545 U.S. at
28 530, 125 S.Ct. 2641).  Such "claims" can take a variety of

1  forms, including a motion that "attacks the federal court's
2  previous resolution of a claim *on the merits*[.]" <u>Gonzalez</u>, 545
3  U.S. at 532, 125 S.Ct. 2641 (footnote omitted) (emphasis in
4  original).  "On the merits" in this context "refer[s] . . . to
5  a determination that there exist or do not exist grounds
6  entitling a petitioner to habeas corpus relief[.]" <u>Id.</u> at 532
7  n. 4, 125 S.Ct. 2641.

8      The Supreme Court in <u>Gonzalez</u> "gave a number of examples
9  of . . . 'claims'" which, if present in a Rule 60(b) motion,
10  are "in substance. . . a new request for relief on the merits
11  and should be treated as a disguised § 2255 motion."
12  <u>Washington</u>, 653 F.3d at 1063 (citation omitted).  One such
13  claim, as the Supreme Court recognized, and which is of
14  particular significance here, is an "attack based on . . .
15  omissions" by habeas counsel[.]" <u>See</u> <u>Gonzalez</u>, 545 U.S. at
16  532 n. 5, 125 S.Ct. 2641 (citation omitted).  The reason such
17  attacks are deemed to be "claims," which, in turn, should be
18  "treated as "disguised § 2255 motion[s]" is because
19  "ordinarily" such attacks "do[] *not* go to the integrity of the
20  [habeas] proceedings, but in effect ask[] for a second chance
21  to have the merits determined favorably.  <u>Id.</u> (emphasis
22  added).  Claims such as this are thus outside the purview of
23  Rule 60(b).

24      "[F]ocus[ing] on the substance" of Valdez's motion,
25  <u>Washington</u>, 653 F.3d at 1063 (citing <u>Gonzalez</u>, 545 U.S. at
26  530-533, 125 S.Ct. 2641), persuades this court that his Rule
27  60(b)(6) motion is, actually, a disguised section 2255 motion.
28  Movant Valdez argues that the "integrity of [his] § 2255

1  proceeding[]" was "compromised" because, even though this
2  court had granted a COA as to his IAC claim, the movant was
3  denied appellate review of that claim due to his habeas
4  counsel's failure to file an opening brief, resulting in the
5  dismissal of the movant's appeal.  See Mot. (Doc. 1) at 5.  On
6  that basis, the movant believes his reliance upon Rule
7  60(b)(6) is proper.

8      The Supreme Court's explicit observation in Gonzalez that
9  "an attack based on . . . habeas counsel's omissions does *not*
10 go to the integrity of the proceedings[]" forecloses Valdez's
11 argument, however.  See Gonzalez, 545 U.S. at 532 n. 2, 125
12 S.Ct. 2641 (emphasis added).  Furthermore, as the following
13 discussion shows, since Gonzalez, "[f]ederal courts [have]
14 routinely hew[n] to this language in denying Rule 60(b)
15 motions . . . for lack of jurisdiction."  See United States v.
16 Harris, 2010 WL 2231893, at *3 (S.D.Ala. June 2, 2010) (citing
17 cases).  What is more, as also will be seen, the fact that a
18 petitioner's IAC claim is not addressed on appeal as a result
19 of some omission by habeas counsel, does not change this
20 result.  That is because courts have implicitly found that an
21 "on the merits" determination, as the Gonzalez Court defined
22 it, does not encompass appellate review of a district court's
23 denial of a habeas petition, even when that court granted a
24 COA as to the ICA claim.

25     Because they are closely analogous to the present case,
26 Gray v. Mullin, 171 Fed.Appx. 741 (10th Cir. 2006)
27 (unpublished), and Post v. Bradshaw, 422 F.3d 419 (6th Cir.
28 2005), are particularly instructive.  Gray is particularly so

because the absence of appellate review due to an omission by habeas counsel, as here, did not prevent the Tenth Circuit from finding that there had been a merits determination within the meaning of Gonzalez.

In Gray, the district court denied the petitioner's original habeas petition and granted a COA as to his IAC claim. The petitioner was not afforded appellate review of that denial, however, because of an omission by habeas counsel. His habeas counsel was under the mistaken belief that the district court would transmit the entire record, including the state court records, to the appellate court.

The Tenth Circuit affirmed the denial of Gray's habeas petition because his counsel did not provide a complete appellate record. Petitioner's counsel sought rehearing and leave to supplement the record. In denying that relief, the Tenth Circuit "not[ed] [that] it was not permitted . . . to grant rehearing based on attorney neglect, and that 28 U.S.C. § 2254(j) prohibits habeas relief based on ineffective counsel in state or federal collateral post-conviction proceedings." Id. at 743 (citation omitted).

Petitioner Gray resorted to Rule 60(b)(6). In granting that motion, the district court "vacated its original . . . order. . . ; issued a new, verbatim order denying habeas relief; and granted petitioner a certificate of appealability." Id. Vacating that order, the Tenth Circuit held that the district court lacked "jurisdiction to grant the motion or to reach the merits of petitioner's claims." Id. Strictly based upon Gonzalez, the Gray Court held that the

1  petitioner's Rule 60(b) motion was "an improper attempt to
2  file a second and successive habeas petition[.]" Id.

3      Distinguishing Gonzalez, the Tenth Circuit reasoned that
4  the district court's procedural ruling therein "precluded a
5  merits analysis of the habeas claims by that court[,]" whereas
6  the "district court in [Gray] did rule on the merits of
7  petitioner's habeas claims, and petitioner's Rule 60(b) motion
8  unquestionably reassert[ed] the same substantive [IAC] claim
9  that he asserted in his § 2254 petition." Id. (emphasis in
10 original).  Further, because the Supreme Court in Gonzalez
11 unequivocally declared that "'an attack based on . . . habeas
12 counsel's omissions ordinarily does not go to the integrity of
13 the proceedings,'" the Gray Court rejected the petitioner's
14 argument "that he properly invoked Rule 60(b) to avoid a
15 fundamental miscarriage of justice so that his appeal could be
16 heard on the merits, [and] not be dismissed because of his
17 counsel's failure to transmit the necessary record on appeal."
18 Id. (quoting Gonzalez, 545 U.S. at ___, 125 S.Ct. 2641).

19     Given the similarities between Gray and the present case,
20 Gray's reasoning applies with equal force here.  Just as in
21 Gray, this court denied the movant's habeas motion and granted
22 a COA solely as to his IAC claim.  Also as in Gray, albeit for
23 a different reason, movant Valdez did not have appellate
24 review on the merits of his habeas motion alleging IAC.  And
25 finally, movant Valdez, as did petitioner Gray, is seeking to
26 have this court vacate its denial of his habeas motion so he
27 can pursue his appeal on the merits of his IAC claim.  As Gray
28 makes clear, however, this court lacks jurisdiction to

entertain the movant's Rule 60(b)(6) motion because, under these circumstances, it constitutes an impermissible second and successive habeas motion.  <u>See also</u> <u>Gurry v. McDaniel</u>, 149 Fed.Appx. 593, 595-96 (9th Cir. 2005) (vacating district court's decision on the merits of petitioner's Rule 60(b) motion, because it was a successive habeas petition in that he alleged, *inter alia*, an IAC claim with respect to his previous habeas counsel).

    <u>Post</u> is similarly instructive because it held that the petitioner's Rule 60(b)(6) motion was a second or successive habeas petition, although, as here, it did not "attack the district court's substantive analysis of" its "prior dismissal of [petitioner's] habeas petition."  <u>Post</u>, 422 F.3d at 424-425.  In his Rule 60(b)(6) motion, Post alleged "incompetent and ineffective representation . . . during his federal post-conviction collateral review" because his lawyer did not pursue discovery, even though Post sought and obtained district court approval for that discovery.  <u>Id.</u> at 423.  It was "clear" to the <u>Post</u> Court that "whatever appellation [it] might apply to counsel's neglect[,]" the AEDPA did not allow for relief.  <u>Id.</u>  In finding Post's motion to be a second or successive habeas petition, the Court reasoned:

> It makes no difference that the motion itself does not attack the district court's substantive analysis of those claims but, instead, purports to raise a defect in the integrity of the habeas proceedings, namely his counsel's failure-after obtaining leave to pursue discovery-actually to undertake that discovery[.]

Id. at 424.   Continuing, the Court further reasoned: "[A]ll that matters is that Post is 'seek[ing] vindication of' or 'advanc[ing]' a claim by taking steps that lead inexorably to a merits-based attack on the prior dismissal of his habeas petition."   Id. at 424-425 (quoting Gonzalez, 545 U.S. at 531-532, 125 S.Ct. 2641).

That is precisely what movant Valdez is doing through his Rule 60(b)(6) motion.   By seeking to vacate the denial of his section 2255 motion alleging IAC, and allowing an appeal of that denial, clearly the movant is taking "steps that lead inexorably to a merits-based attack on the prior dismissal of his habeas [motion]."   See id.   Gonzalez and its progeny simply do not allow movant Valdez to circumvent section 2255(h)'s restrictions on the filing a second and successive section 2255 habeas petition in that way.

This court's holding is entirely consistent with other courts within this District.   Relying upon Gonzalez and Post, those courts likewise have held that claims of incompetent habeas counsel do not challenge "some defect in the integrity of the federal habeas proceedings[,]" but, rather, are "'claim[s]' . . . attacking the federal court's previous resolution of a claim on the merits[.]"   See Gonzalez, 545 U.S. at 532 (footnote omitted) (emphasis in original).   In Van Adams v. Schriro, 2009 WL 89465 (D.Ariz. Jan. 14, 2009), a capital case, among the asserted grounds for Rule 60(b) relief was the petitioner's claim that "he was not afforded competent habeas counsel."   Id. at *1 (internal quotation marks and citation omitted).   During the habeas proceeding, the court appointed an expert psychiatrist to examine petitioner and

make a competency determination in accordance with <u>Rohan v. Woodford</u>, 334 F.3d 803 (9th Cir. 2003).[7]  Then District Court Judge Murgia, rejected the petitioner's argument "that his allegations of *Rohan* incompetence and ineffective assistance of habeas counsel challenge the integrity of the habeas proceedings and therefore constitute[d] a basis for a proper motion under Rule 60(b)."  <u>Id.</u> at *4 (footnote added); <u>see also</u>  <u>West v. Schriro</u>, 2008 WL 4693393, *5 (D.Ariz. Oct. 20, 2008) (Rule 60(b) motion "based on habeas counsel's failure to obtain mental health evidence that Petitioner . . . wishe[d] to present . . . to challenge" district court's denial of his IAC claim was "in essence" an improper "request to adjudicate a successive petition"); <u>United States v. Bahna</u>, 2010 WL 4916584 (C.D.Cal. Nov. 24, 2010) (IAC claim against post-conviction counsel did not "provide[] a cognizable basis for a Rule 60(b) motion[,]" but was "in effect [a] habeas 'claim[]' to be litigated in accordance with the AEDPA[]"); <u>United States v. Buenrostro</u>, 2008 WL 1925245, *4-5 (E.D.Cal. Apr. 30, 2008)[, <u>aff'd</u>, 638 F.2d 720 (9th Cir. 2011),] (Rule 60(b) motion predicated on habeas counsel's lack of diligence is, in substance, a successive § 2255 motion cloaked in Rule 60(b) rubric).  Courts outside this District have reached the same conclusion.  <u>See</u>, <u>e.g.</u>, <u>Akemon v. Brunsman</u>, 2008 WL 1766707,

---

[7]     In <u>Rohan</u>, the Ninth Circuit held that a prisoner "has a statutory right to competence in his federal habeas proceedings," with competence defined as "the capacity to understand his position and to communicate rationally with counsel."  <u>Rohan</u>, 334 F.3d at 819.  Just recently, the Supreme Court abrogated <u>Rohan</u>.  <u>See</u> <u>Ryan v. Gonzales</u>, —–– U.S. —––, 133 S.Ct. 696, 184 L.Ed.2d 523 (2013).

*4 (S.D.Ohio Apr. 17, 2008) ("Petitioner . . . is unable to prevail on any claim that his habeas counsel's ineffectiveness amounted to a defect in the integrity of the federal habeas proceedings which may be considered by [the district court] as a ground for granting relief under [Rule 60(b)]") (internal quotation marks omitted); United States v. Sowers, 2007 WL 2302426, *3 (M.D.Ala. Aug. 9, 2007) (where petitioner's Rule 60(b) motion only challenged presentation of evidence by habeas counsel and sought to present additional evidence in support of original claim for relief, it did not affect integrity of proceedings and was a second or successive habeas petition).  After independently reviewing the movant's self-styled Rule 60(b)(6) motion, and based upon this great weight of authority, it is abundantly clear, as the Magistrate Judge recommended, that the court lacks jurisdiction to entertain this motion because it is an impermissible second or successive habeas petition.[8]  Hence, it must be denied.

### C.  Motion to Supplement

With respect to his motion to supplement, movant Valdez did not provide any specific objections to the R & R's treatment of Maples.  Consequently, this court has no obligation to review the Magistrate Judge's recommendation in that regard.  See  Gordon v. Ryan, 2012 WL 2572192, at *1

---

[8]      Indeed, in U.S. v. Soto-Valdez, 2009 WL 1311954 (D.Ariz. May 12, 2009), the court foresaw the possibility "that any subsequent habeas corpus petition which defendant files may be deemed a 'second or successive' petition which the [AEDPA] generally prohibits."  Id. at *2 n. 1 (citation omitted).

(July 2, 2012) (quoting <u>Thomas v. Arn</u>, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (emphasis added by <u>Gordon</u> court)) ("[C]onstruing the Federal Magistrates Act, the Supreme Court has found that that "'statute does *not* on its face *require any review at all*, by either the district court or the court of appeals, *of any issue that is not the subject of an objection*.'")

The court hastens to add that even construing the movant's selective quotes from <u>Maples</u> as an objection, it is meritless because the movant has not even attempted to show that the Magistrate Judge's recommendation was either "clearly erroneous" or "contrary to law."  See <u>Ranza v. Nike, Inc.</u>, 2013 WL 869522, at *2 (D.Or. March 7, 2013) (applying that standard pursuant to section 636(b)(1)(A) to a magistrate judge's denial of plaintiff's motion to supplement the record).  Therefore, as did the Magistrate Judge, this court finds that <u>Maples</u> does not change the analysis or the result with respect to whether the movant's "pleading labeled as a Rule 60(b)[(6)]" includes a claim attacking his habeas counsel's omission, and as such "'is in substance a successive habeas petition and should be treated accordingly.'"  See <u>Delgado v. United States</u>, 2012 WL 761594, at *3 (E.D.Cal. March 8, 2012) (quoting <u>Gonzalez</u>, 545 U.S. at 531) (other citation omitted).

## *II.  Post-R & R Motion*

After the issuance of the R & R and the filing of the movant's objections thereto, <u>Martinez v. Ryan</u>, 566 U.S. 1, 132 S.Ct. 1309, 132 L.Ed.2d 272 (2012), and <u>Mackey v. Hoffman</u>, 682

F.3d 1247 (9th Cir. 2012), were decided.  Thereafter, the movant filed a "motion to supplement" his Rule 60(b)(6) motion.  Mot. (Doc. 14) at 1.  In that motion, movant Valdez is seeking to have this court "consider" <u>Martinez</u>, <u>Mackey</u> and, as he did previously, the Supreme Court's decision in <u>Maples</u>, 132 S.Ct. 912.  <u>Id.</u> at 2.  Although not framed in this way, as the court construes his motion, the movant is contending that those three cases are tantamount to an intervening change in law, which, in turn, constitutes an extraordinary circumstance justifying relief from judgment pursuant to Fed.R.Civ.P. 60(b)(6).

The United States counters that none of those three cases change the Magistrate Judge's analysis, because they did not "create additional claims cognizable" under Rule 60(b)(6). Resp. (Doc. 16) at 3:1-3 (emphasis omitted).  As it did originally, the United States again raises the issue of timeliness.  By the United States' calculations, Valdez did not file his Rule 60(b)(6) motion until nine years after the filing date for his opening brief in the Ninth Circuit.  Not only that, but, as the United States stresses, Valdez did not file his motion until five and a half years after learning that attorney Kooyumjian was not entitled to practice law in California.

To refute that timeliness argument, in his reply, movant Valdez offers a litany of reasons, discussed herein, which he claims are tantamount to "'extraordinary circumstances' [which] prevented [him] from taking timely action to challenge the abandonment of his appeal by attorney . . . Kooyumjian."

Reply (Doc. 17) at 3.

### A.  Rule 60(b)(6)

Pursuant to Rule 60(b)'s catchall provision, a district court may relieve a party from a final judgment, order, or proceeding for "any other reason that justifies relief." Fed.R.Civ.P. 60(b)(6).  A motion brought pursuant to that Rule "must be made within a reasonable time[.]" Fed.R.Civ.P. 60(c). A movant seeking relief under Rule 60(b)(6) also must "show 'extraordinary circumstances' justifying the reopening of a final judgment." <u>Gonzalez</u>, 545 U.S. at 535.  In the present case, even if the court were to conclude that movant Valdez otherwise properly invoked Rule 60(b)(6), he has shown neither timeliness nor extraordinary circumstances.

### 1.  Timeliness

Noting that movant Valdez's appeal was dismissed on March 6, 2002, for failure to file his opening brief, the United States points out that he waited almost nine years[9] -- until February 7, 2011 -- to file this motion.  The United States further relies upon the May 13, 2005, letter from the State Bar of California informing the movant that at that time Mr. Kooyumjian's was "not entitled to practice[]" law there.  Mot. (Doc. 1), exh. G thereto.  Even with that knowledge, the

---

[9]   Actually, the United States indicates that this motion was filed "*more than nine years*" late. Resp. (Doc. 3) at 5:22 (emphasis added).  That calculation is based upon the United States' inaccurate assumption that "[t]he alleged failure occurred on September 4, 2001[.]" <u>Id.</u> at 5:17-18.  At one point  the opening brief was due on that date, but the movant was granted an extension so that his opening brief and excerpts were due by November 5, 2001.  <u>U.S v Soto-Valdez</u>, # 01-15427 (9th Cir.) at 7 (August 20, 2001) and 8 (September 19, 2001).  Of more import though is that the alleged failure, as the United States later recognizes, was the dismissal of the appeal for failure to perfect.  That did not occur until March 6, 2002. Thus, the more accurate date for this calculation is March 6, 2002, meaning this motion was filed almost nine years late, not "*more* than nine years late[,]" as the United States maintains.  <u>See</u> Resp. (Doc. 3) at 5:22.

1 movant waited more than five and a half years from that date

2 before filing his Rule 60(b)(6) motion.  Based upon these two

3 events, the United States argues that this motion was not

4 brought within a "reasonable time" within the meaning of Rule

5 60(c)(1).

6    What constitutes a "reasonable time" involves a fact-

7 specific inquiry.  It "'tak[es] into consideration the

8 interest in finality, the reason for delay, the practical

9 ability of the litigant to learn earlier of the grounds relied

10 upon, and prejudice to the other parties.'"  See Lemoge v.

11 United States, 587 F.3d 1188, 1197 (9th Cir. 2009) (quoting

12 Ashford v. Steuart, 657 F.2d 1053, 1055 (9th Cir. 1981)).

13 Whether viewed individually or collectively, movant Valdez's

14 proffered reasons do not "demonstrate 'that circumstances

15 beyond [his] control prevented timely action to protect its

16 interests.'"   Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In

17 re Int'l Fibercom, Inc.), 503 F.3d 933, 941 (9th Cir. 2007)

18 (quoting U.S. v. Alpine Land & Reservoir Co., 984 F.2d 1047,

19 1049 (9th Cir. 1993)).  In the absence of such a showing,

20 movant Valdez is not entitled to Rule 60(b) relief.  See id.

21 (emphasis added)("relief under Rule 60(b) should *only* be

22 granted where the moving party is able to" make such a

23 showing).

24    According to the movant, the "[f]irst and foremost"

25 factor excusing his delay in filing this motion is the

26 purported validity of his IAC claim against attorney

27 Kooyumjian.  See Reply (Doc. 10) at 6.  While the movant

28 places a great deal of significance on this factor, he does

1  not cite to any authority showing that the relative merits of
2  an underlying claim somehow excuse an otherwise untimely Rule
3  60(b)(6) motion.  The lack of authority to support that
4  proposition is not surprising given that the relative merits
5  is not among the factors courts consider in assessing what
6  constitutes a "reasonable time" for bringing such a motion.

7      In contrast, the facts and circumstances available to the
8  movant as early as 2005 are highly probative in ascertaining
9  the timeliness of this motion.  As his own exhibit shows, in
10 2005 the movant had concerns about attorney Kooyumjian's
11 representation of him.   In a letter dated March 3, 2005, to
12 the State Bar of California movant Valdez alleged professional
13 misconduct against Kooyumjian.  See Mot. (Doc. 1), exh. G
14 thereto at 18.  The May 13, 2005, response informed the movant
15 of Mr. Kooyumjian's "current status with the State Bar[;]" he
16 was "not entitled to practice[] law.  See id.  So by mid-May
17 2005, the movant knew or reasonably should have known that Mr.
18 Kooyumjian was not entitled to practice law in California.
19 Indeed, initially, when he filed this motion in February,
20 2011, movant Valdez relied upon that letter as the first of
21 two bases for seeking relief from judgment.

22      Additionally, because on approximately February 16, 2001,
23 the movant, among others, was provided with a copy of his
24 habeas notice of appeal, see Doc. 1212 (95-CR-320-PHX-RCB), he
25 knew or reasonably should have known that that notice had been
26 filed more than four years earlier.  These circumstances, at a
27 minimum, should have prompted movant Valdez to make some
28 inquiry, regardless of the source, as to the status of his

appeal; but he did not.  The record is void of any evidence
that at that time Valdez, or anyone on his behalf,  attempted
to contact his attorney, the Ninth Circuit, or this district
court.

The movant's failure to take some action in 2005 is even
more puzzling given that by then he had some familiarity with
the length of the appellate process.  In 2005, the movant knew
or reasonably should have known that the Ninth Circuit had
affirmed his conviction approximately one year after the
filing of his notice of appeal.  Thus, in the movant's
experience, albeit limited, hearing nothing about his habeas
appeal after approximately four years, should have prompted
him to make some inquiry or take some action.  This is all the
more so taking into account, as just discussed, that in mid-
May 2005 the movant was fully aware that his habeas appellate
counsel was no longer entitled to practice law in California.

Rather than pursuing the status of his appeal, or taking
any other action, the movant sat idly by for about two and a
half more years.  As the movant candidly acknowledges, "[i]t
was not until 2008, when [he] . . . obtained a copy of the
Docket Records from his case that he discovered that the
appeal from his § 2255 motion had been dismissed because no
opening brief had been filed on his behalf[.]"[10]  Reply (Doc.
10) at 7.  Even when armed with that additional knowledge,

---

[10]    The Ninth Circuit's docket seems to corroborate that on January
7, 2008, it "[r]eceived [a] letter from pro se re: status of the case."
U.S. v Soto-Valdez, # 98-10389 (9th Cir.)(Jan. 7, 2008) at 37.  The Ninth
Circuit almost immediately responded by sending the  "[p]ublic docket
sheet" on January 10, 2008.  Id.  This docket entry is from plaintiff's
appeal in his criminal case, but seemingly he also was provided a copy of
the docket from his section 2255 appeal at this time.

movant Valdez did not file a Rule 60(b)(6) motion.

In an effort to explain his inaction in 2008, the movant faults attorney Kooyumjian who allegedly "took all the records of Valdez['s] case[,]" and "never provided" them to Valdez. Reply (Doc. 17) at 3; and Reply (Doc. 10) at 6.  Consequently, the movant contends that it was not "until 2011[,]" after two years of litigation, that he came into "possession of sufficient records of this case that . . . allow[ed] him to discover his claims[]."  Reply (Doc. 10) at 7.  More specifically, the movant contends that he "discovered that attorney . . . Kooyumjian had abandoned [the movant's] appeal without filing appellant's brief."  <u>Id.</u>

Regardless of how Mr. Kooyumjian's conduct is characterized, as just explained, however, three years earlier, in 2008, the movant knew that his appeal had been dismissed for failure to file an opening brief.  Thus, the movant did not need to obtain his case records to confirm what he already knew.  Moreover, the movant was very clear as to why he wanted to obtain those records – not because of anything pertaining to his appeal – but rather, to pursue an actual innocence claim.  <u>U.S. v. Soto-Valdez</u>, 2009 WL 1311954, at *2 (D.Ariz. May 12, 2009) (internal quotation marks, citation and footnote omitted) ("Defendant asserts . . . that he needs access to the court's file to perfect[ ] . . . a collateral attack raising an actual innocen[ce] claim[.]") The foregoing eviscerates the movant's argument that it was not until 2011 that he became aware that his attorney had not filed an opening brief in the Ninth Circuit.  Movant Valdez

knew of that omission in 2008, as he admits.

Further endeavoring to show circumstances beyond his control which prevented him from timely filing this motion, the movant advises that he is a "Mexican Nationalist[,]" who has limited English proficiency, and "no understanding of the American federal justice system." Reply (Doc. 10) at 6. Movant Valdez adds his lack of financial resources to hire "an attorney to investigate his case or what happened to his appeal[.]" Reply (Doc. 17) at 3. Regrettably, limited English proficiency and a lack of financial resources are not uncommon among the prison population and, more importantly, do not factor into the court's reasonableness inquiry.

Despite these claimed limitations, in 2008, movant Valdez was able to obtain "the assistance of an Inmate Law Clerk[,]" which is how he learned that his habeas appeal had been dismissed for failure to prosecute. See Reply (Doc. 10) at 7. Significantly, the movant does not explain why he waited until 2008, nearly seven years from the filing of his notice of appeal, to obtain such assistance. Additionally, the movant's claimed limitations did not hinder the ability of movant Valdez, *pro se*, to file: (1) a motion seeking his case file (Doc. 1310); (2) a motion for leave to appeal *in forma pauperis* (Doc. 1319); and (3) a notice of appeal as to the order denying his motion to obtain his case file (Doc. 1316). These actions belie Valdez's assertion that he "has *no* understanding of the American federal justice system." Reply (Doc. 10) at 6 (emphasis added). These actions further demonstrate that the movant's limited English proficiency,

while perhaps a circumstance beyond his control, did not prevent him from timely filing his Rule 60(b)(6) motion.

To recount, in 2005, insofar as the movant was aware, his appeal had been pending without resolution since February 2001.  Also in 2005, the movant learned that his appellate attorney was no longer entitled to practice law in California. Nonetheless, movant Valdez did nothing to ascertain the status of his appeal.  Another two and a half years or so passed before the movant contacted the Ninth Circuit and was put on notice that his appeal was dismissed for failure to file an opening brief.  Even at that time, however, in early 2008, the movant did not file a Rule 60(b)(6) motion.  Instead, he waited roughly three more years before filing such a motion. Courts have routinely held that delays of less than three years in seeking Rule 60(b)(6) relief are not reasonable. See, e.g.,   Morse-Starrett Products Co. v. Steccone, 205 F.2d 244, 249 (9th Cir. 1953) (22 months unreasonable); Foley v. Rowland, 2012 WL 4027129, at *3 (E.D.Cal. Sept. 12, 2012) (16 month delay unreasonable), adopted, 2012 WL 4490881 (E.D.Cal. Sept. 28, 2012); Hogan v. Robinson, 2009 WL 1085478, at *4 (E.D.Cal. April 22, 2009) (Rule 60(b)(6) motion "filed over 18 months after judgment was entered, and over two years after Plaintiffs were put on notice of the facts and circumstances upon which they rely[]" was untimely); Henry v. Lindsey, 2008 WL 4594948, at *2 (N.D.Cal. Oct. 15, 2008) (Rule 60(b)(6) motion untimely where the petitioner waited "an additional two and a half years" after the Ninth Circuit's affirmance before filing); Swait v. Evans, 2008 WL 4330291, at *5 - *6 (C.D.Cal.

Sept. 22, 2008) (Rule 60(b) motions untimely where petitioner "failed to proffer any legally valid explanation for his two-year delay" in filing).  Accordingly, this court has little difficulty finding that movant Valdez did not file his Rule 60(b)(6) motion within a reasonable time.

This conclusion is all the more compelling considering, as the court must, the interest in finality and prejudice to the other parties.  Given that the movant's habeas appeal was dismissed on March 6, 2002, his case was closed and the judgment final for almost nine years before he sought relief under Rule 60(b)(6).  Under these circumstances, granting movant Valdez's motion would severely undermine the integrity of the appellate process and prejudice the government.  <u>See</u> <u>Liljeberg v. Health Services Acquisition Corp.</u>, 486 U.S. 847, 864, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (Rehnquist, C.J., dissenting) ("This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved").  For all of the reasons discussed herein, even if movant Valdez's motion could properly be construed as being brought pursuant to Rule 60(b)(6), he did not bring it within a "reasonable time" as Rule 60(c) mandates.

### 2. *"Extraordinary Circumstances*

The Ninth Circuit "use[s] Rule 60(b)(6) sparingly as an equitable remedy to prevent manifest injustice."  <u>Lal v.</u> <u>California</u>, 610 F.3d 518, 524 (9th Cir. 2010) (internal quotation marks and citation omitted).  Therefore, "[i]n order to bring himself within the *limited* area of Rule 60(b)(6) a petitioner is required to establish the existence of

extraordinary circumstances which prevented or rendered him
unable to prosecute an appeal." <u>Mackey</u>, 682 F.3d at 1251
(emphasis added) (internal quotation marks and citation
omitted). "Such [extraordinary] circumstances will rarely
occur in the habeas context." <u>Gonzalez</u>, 125 S.Ct. at 2649.

### *a. Maples*

Through his "motion to supplement," apparently movant
Valdez is attempting to establish extraordinary circumstances
based upon a claimed intervening change in the law, *i.e.*,
<u>Maples</u>, 132 S.Ct. 912, <u>Martinez</u>, 566 U.S. 1, and <u>Mackey</u>, 682
F.3d 1247.  Typically, when confronted with such an argument,
the court would apply the analytical framework adopted in
<u>Phelps v. Alameida</u>, 569 F.3d 1120 (9th Cir. 2009), requiring a
"case-by-case inquiry[,]" balancing a number of competing
factors.  <u>Id.</u> at 1133 (internal quotation marks and citation
omitted); <u>see</u> <u>also</u> <u>Lopez v. Ryan</u>, 678 F.3d 1131, 1135–37 (9th
Cir.), <u>cert.</u> <u>denied</u>, —– U.S. -–--,  133 S.Ct. 55, 183 L.Ed.2d
698 (2012).  A <u>Phelps</u> analysis would be a futile exercise in
this case, however, at least with respect to the Supreme
Court's decisions in <u>Maples</u>, 132 S.Ct. 912, and <u>Martinez</u>, 566
U.S. 1.  Even assuming *arguendo* that <u>Maples</u> is a change in law
as applied to movant Valdez, it is not an *intervening* change
in that <u>Maples</u> was decided while Valdez's motion was pending
before the Magistrate Judge.  And, indeed, as earlier
discussed, the Magistrate Judge considered and rejected the
movant's argument that <u>Maples</u> supports his Rule 60(b)(6)
motion –-- a conclusion with which this court agrees.  Thus,
strictly from a temporal standpoint, <u>Maples</u> is not an

1  *intervening* change in law, and cannot support a finding of

2  extraordinary circumstances in this case.

3            ***b. Martinez***

4      *Martinez*, 132 S.Ct. 1309, likewise does not constitute an

5  intervening change in law as it relates to movant Valdez.   In

6  *Martinez*, the Supreme Court carved out "a narrow exception[]"

7  -- an "equitable ruling[,]" 132 U.S. at 1319  -- to the

8  "unqualified statement in" *Coleman v. Thompson*, 501 U.S. 722,

9  111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), "that an attorney's

10 ignorance or inadvertence in a postconviction proceeding does

11 not qualify as cause to excuse a procedural default."

12 *Martinez*, 132 S.Ct. at 1315.  The *Martinez* Court "held that a

13 procedural default will not bar a federal habeas court from

14 hearing a substantial claim of ineffective assistance at trial

15 if, in the [*State's*] *initial-review collateral proceeding*,

16 there was no counsel or counsel in that proceeding was

17 ineffective." *Trevino v. Thaler*, 569 U.S. ----, 133 S.Ct.

18 1911, 1912, --- U.S. L.Ed.2d ---- (2013) (emphasis added).[11]

19

20      [11]     To the extent movant Valdez's post R & R motion can be read as
   asserting that *Martinez* can form the basis for a application for a second
21 or successive section 2255, the Ninth Circuit's decision in *Buenrostro v.*
   *United States*, 697 F.3d 1137 (9ᵗʰ Cir. 2012), forecloses that argument.  The
22 *Buenrostro* Court unambiguously held that "*Martinez* cannot form the basis
   for an application for a second or successive motion because it did not
23 announce a new rule of constitutional law." *Id.* at 1139.  Likewise, the
   Ninth Circuit held that "*Martinez* cannot form the basis for Buenrostro's
24 application" to file a second or successive § 2255 motion because:
   (1)  "*Martinez* concern[ed] procedural default based on ineffective
25 assistance of habeas counsel in state habeas proceedings[;]" and
   (2)  "Buenrostro is a federal prisoner who wishes to collaterally attack
26 the legality of his federal conviction or sentence under 28 U.S.C.
   § 2255." *Id.* at 1140.  Consequently, the Ninth Circuit found *Martinez* to
27 be "inapplicable to federal convictions[.]"   *Id.*
        *Buenrostro*'s rationale applies with equal force here.  Movant Valdez
28 is a federal prisoner who, like Buenrostro, "wishes to collaterally attack
   the legality of his federal conviction or sentence under 28 U.S.C. § 2255."
   *See id.*  As *Buenrostro* makes clear, though, *Martinez* does not apply to

Because the present case does not "involve the initial review of the state collateral proceeding[,]" the United States contends that Martinez is "inapposite." Resp. (Doc. 16) at 4:24; and at 3:8. Based upon unspecified "language" in the Martinez "holding[,]" the movant responds that that holding "applies to both state and federal prisoners[.]" See Reply (Doc. 17) at 5. The movant misapprehends the scope of Martinez.

A close reading of Martinez confirms its limited applicability and, in turn, the strength of the United States' position herein. Because "[t]he rule of Coleman governs in all but the limited circumstances recognized" in Martinez, the Supreme Court could not have been more clear; its "holding . . . does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." Martinez, 132 S.Ct. at 1320 (citations omitted). Stressing its limited holding, the Supreme Court further explained that Martinez "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons." Id. (emphasis added) (citations omitted). Finally, the Court expressly limited its holding to "only the constitutional claims presented in this case, where the State barred the defendants from raising the claims on

federal convictions, such as the movant's. Thus, Martinez cannot form the basis for a second or successive section 2255 petition in this case.

1  direct appeal." Id. (emphasis added).

2      Pinnell v. Belleque, 2012 WL 6649229, at *2 (D.Or. Dec.

3  20, 2012), illustrates just how narrowly courts have construed

4  Martinez. In Pinnell, the court rejected the petitioner's

5  argument that "pursuant to *Martinez* [an] ineffective

6  assistance of post-conviction trial counsel [c]ould serve as

7  cause to excuse the default of his ineffective assistance of

8  direct appellate counsel claims." Id. at *2. Pointing out

9  that Martinez "specifically limited the exception to claims

10 on ineffective assistance of *trial* counsel[,]" the Pinnell

11 court declined to extend Martinez to cover claims of

12 ineffective assistance of direct appellate counsel. See id.

13     Movant Valdez's situation is even more attenuated when

14 compared to Martinez. Clearly, the present case is outside

15 the narrow scope of Martinez given that movant Valdez is a

16 federal prisoner, without any claims of procedural default and

17 cause and prejudice. See Cross v. Benedetti, 2012 WL 3252863,

18 at * 3 (D. Nev. Aug. 7, 2012) (footnote omitted) (Martinez

19 inapplicable because neither petitioner's "first nor . . .

20 second federal [habeas] petition constituted initial-review

21 state collateral proceedings."). Simply put, Martinez "did

22 not change the law in a manner germane to the judgment

23 rendered in this action." See Hamilton v. Swarthout, 2012

24 WL 4343830, at *3 (N.D.Cal. Sept. 21, 2012). Consequently,

25 the court readily concludes that Martinez does not represent

26 an intervening change in law, and cannot form the basis for a

27 finding of extraordinary circumstances here.

28 . . .

### c.  *Mackey*

The third decision upon which movant Valdez is relying to show extraordinary circumstances is <u>Mackey</u>, wherein the Ninth Circuit held "that a district court may grant an incarcerated habeas petitioner relief from judgment pursuant to" Rule 60(b)(6) "if his attorney's abandonment causes him to fail to timely file a notice of appeal." <u>Mackey</u>, 682 F.2d at 1248 (emphasis added). Mackey, a state prisoner, represented by counsel, filed a timely federal habeas petition, alleging IAC by his trial counsel.  The court issued an order directing the state to show cause why the writ of habeas corpus should not be granted, which it did.  Mackey's counsel, LeRue Grim, "did not file a traverse by the March 2008 due date[,]" however. <u>Mackey</u>, 682 F.3d at 1248.

In June, 2008 attorney Grim wrote Mackey, informing him that his case was before the federal court in San Francisco, that they were waiting for a trial date, and telling Mackey to ask his parents to make a payment on his legal bill.  <u>Id.</u> Attorney Grim did nothing further.  On July 13, 2009, the district court denied Mackey's habeas petition on the merits and entered judgment against him.  <u>Id.</u>  Although he received prompt notification of that entry of judgment, attorney Grim did not notify Mackey and he did not file a notice of appeal. <u>Id.</u> at 1249.

Eight months after the entry of judgment, Mackey wrote the district court "stating that he was 'unaware of the current status' of his case."  <u>Id.</u>  After being advised of the entry of judgment against him, Mackey again wrote to the

district court, "concern[ed] about his appellate rights[.]"
Id.   Mackey further advised the court that for months his
lawyer had been telling him that he had a court date.   Id.

At the direction of the court, attorney Grim responded
that Mackey's parents had retained him for state post-
convictions proceedings, but they had only partially paid him.
Id.  Nonetheless, attorney Grim, *pro bono*, filed a section
2254 petition on Mackey's behalf, while at the same time
"'fully inform[ing]'" Mackey and his family that without
payment, he would not perform any other legal work regarding
that petition.   Id.

After Mackey accused Grim of continuously lying to him
about a hearing date, Grim informed the court that because
Mackey's parents had stopped paying Grim, "apparently [they
have] abandoned their son's legal defense."   Id.   Although it
expressed "concern" about a perceived "failure of
communication" between Mackey and attorney Grim, the district
court denied Mackey's Rule 60(b)(6) motion because it
determined that it did not "'possess[] the discretion to
vacate and reenter the judgment in order to allow [Mackey] the
opportunity to appeal[.]'"   Id. at 1254. Mackey appealed.

The Ninth Circuit readily acknowledged that "'[a] federal
habeas petitioner — who as such does not have a Sixth
Amendment right to counsel — is ordinarily bound by his
attorney's negligence, because the attorney and the client
have an agency relationship under which the principal is bound
by the actions of the agent.'" Id. at 1253 (quoting Towery v.
Ryan, 673 F.3d 933, 941 (9th Cir.), cert. denied, --- U.S.

----, 132 S.Ct. 1738, 182 L.Ed.2d 271 (2012)).  Simultaneously though, the Ninth Circuit recognized that "when a federal habeas petitioner has been inexcusably and grossly neglected by his counsel in a manner amounting to attorney abandonment in every meaningful sense that has jeopardized the petitioner's appellate rights, a district court may grant relief pursuant to Rule 60(b)(6)."  Id. (citing, inter alia, Maples, 132 S.Ct. at 924; Tani, 282 F.3d at 1170).  In light of the foregoing, the Ninth Circuit found that if, as Mackey contended, "he has demonstrated that extraordinary circumstances — here, abandonment by counsel of record – prevented him from being notified of the order denying his federal habeas petition[,] . . . justice requires that relief be granted so that he may pursue an appeal."  Id. at 1253 (citation omitted).  Reversing and remanding, the Ninth Circuit instructed the district court to make a finding as to abandonment and, if so, whether to exercise its discretion to grant Mackey Rule 60(b)(6) relief from judgment.  Id. at 1254.

Upon remand, the district court held that Mackey had been abandoned by his lawyer and thus was entitled to Rule 60(b)(6) relief.  Mackey v. Hoffman, 2012 WL 4753512, at *1 (N.D.Cal. Oct. 4, 2012). Focusing on the lack of communication between Mackey and his attorney, the district court faulted Grim for "not keep [Mackey] apprised of the status of []his case[.]" Id.  "[M]ost importantly," the district court found that Grim had "failed to inform [Mackey] that [his] [habeas] petition had been denied and that judgment had been entered."  Id.  The

- 37 -

court further found that Mackey "did not learn of the denial until the time for appeal had lapsed, and this abandonment by his counsel was an 'extraordinary circumstance beyond his control.'" Id. (quoting Maples, 132 S.Ct. at 924).  The court also pointed out that Grim did not abide by the district court's rule "requiring him to seek permission to withdraw as attorney of record[.]"  Id. at 1253 (citation omitted).  Therefore, the court granted Mackey's Rule 60(b)(6) motion and vacated its prior judgment denying such relief.

Without offering any explanation, in his motion to supplement the movant simply contends that Mackey "direct[ly] imp[]act[s] . . . the issues presented" herein. Mot. (Doc. 14) at 1.  The United States is of the view, however, that "*Mackey* applies the holding in *Maples* but does not expand it in any way meaningful to the [movant's] case." Resp. (Doc. 16) at 3:6-7. Distinguishing Mackey on the basis that it "dealt with . . . failure to file a notice of appeal and not[,]" as here, "the effective prosecution of that appeal once it commenced,[,]" the United States argues that Mackey does not alter the R & R's analysis.  Id. at 4:15-17.

Charging the United States with reading Mackey "too narrow[ly][,]" in rejoinder, the movant claims that, much like Mackey, his attorney abandoned him when he did not file the opening brief, resulting in the dismissal of his appeal. Reply (Doc. 17) at 1.  Based upon that alleged attorney abandonment, the movant asserts that he is entitled to "vacature and reentry of the judgment denying his initial § 2255 motion and granting a [COA] on the issue of ineffective

assistance of trial counsel, so that [he] can prosecute the appeal he was denied due to abandonment by his [appellate] attorney[.]" Id. at 5.

"[A] change in the law will not always provide the truly extraordinary circumstances necessary to reopen a case." Phelps, 569 F.3d at 1133 (internal quotation marks and citation omitted). Indeed, the Supreme Court has noted that "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)[.]" Agostini v. Felton, 521 U.S. 203, 239, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). As the Ninth Circuit instructed in Phelps, "[t]he proper course when analyzing a Rule 60(b)(6) motion predicated on an intervening change in the law is to evaluate the circumstances surrounding the specific motion before the court." Id. at 1133. That analysis involves "a case-by-case inquiry . . . . balanc[ing] numerous factors[.]" Id. Those factors include but are not limited to: (1) "the nature of the intervening change in law[;]" (2) "the petitioner's exercise of diligence in pursuing the issue during the federal habeas proceedings[;]" (3) "the interest in finality[;]" (4) the "delay between the finality of the judgment and the motion for Rule 60(b)(6) relief[;]" (5) the "degree of connection" between the original and intervening decisions at issue in the Rule 60(b)(6) motion; and (6) "comity." Lopez, 678 F.3d at 1135–1137 (internal quotation marks and citations omitted). The enumerated factors above are not meant to "impose a rigid or exhaustive checklist[]" in the exercise of this court's

discretion.  <u>Phelps</u>, 569 F.3d at 1135.  Guided by the six <u>Phelps</u> factors, this court will consider whether <u>Mackey</u> constitutes an extraordinary circumstance for purposes of Rule 60(b)(6) so as to justify vacating movant Valdez's judgment of dismissal of his habeas petition entered over a decade ago.

### i.  Nature of Change

The first <u>Phelps</u> factor "focuses on the extent to which the law was settled prior to the intervening change[.]" <u>Phelps</u>, 569 F.3d at 1139.  <u>Gonzalez</u>, 545 U.S. 524, illustrates a situation where a change in law did not constitute extraordinary circumstances.  The district court in <u>Gonzalez</u> had dismissed the petitioner's first federal habeas petition as untimely based upon the AEDPA's statute of limitations.  Pursuant to Rule 60(b)(6), the petitioner sought to reopen that judgment, arguing that a subsequent Supreme Court decision had changed the interpretation of the AEDPA's statute of limitations, so as to render timely his previously time-barred claims.  The petitioner argued that that change in law constituted an extraordinary circumstance warranting relief under that Rule.

Disagreeing, the Supreme Court reasoned that "[t]he District Court's interpretation was by all appearances correct under the Eleventh Circuit's *then*-prevailing interpretation" of the AEDPA's statute of limitations.  <u>Id.</u> at 536 (emphasis added).  Continuing, the Supreme Court pointed out that it was "hardly extraordinary that . . . after petitioner's case was no longer pending," and in resolving a Circuit split, it "arrived at a different

interpretation." _Id._

Contrasting _Gonzalez_, where the change in law "upset or overturn[ed] a settled legal principle[,]" the Ninth Circuit in _Phelps_, held that an intervening change of law favored granting Rule 60(b)(6) relief where the disputed issue "was decidedly _un_ settled" when Phelps' petition was before the district court." _Phelps_, 569 F.3d at 1136 (emphasis in original). When "Phelps' original appeal was pending before a panel of [the Ninth Circuit], the exact same issue was pending before two other Ninth Circuit panels considering other appeals." _Id._ And, "those panels reached diametrically opposite outcomes from that reached by the panel reviewing Phelps' case." _Id._ In fact, the intervening precedent in _Phelps_ "resolved a conflict between multiple Ninth Circuit panels that had issued contemporaneous but contradictory memorandum dispositions." _Id._ at 1139. _see also_ _Anderson v. Kane_, 2009 WL 3059122, at *1 (D.Ariz. Sept. 22, 2009) (comparing cases) (weighing in favor of Rule 60(b)(6) relief because the issue was "not settled in the Ninth Circuit" prior to the intervening change in law). "The law regarding the core disputed issue in the Phelps' case did not become settled until fifteen months after his appeal became final[.]" _Id._ at 1136. What is more, at that point it became apparent that the interpretation was the one Phelps "had pressed all along." _Id._ Under these circumstances, the Ninth Circuit found that the first factor "necessarily cuts in favor of granting" Rule 60(b)(6) relief. _Id._

The Ninth Circuit in _Lopez_, 678 F.3d 1131, was confronted

1   with a change in intervening law which "differ[ed] from the
2   situations at issue in *Gonzalez* and *Phelps*."  Id. at 1136.
3   That is because unlike Phelps, prior to Lopez bringing his
4   Rule 60(b)(6) motion, "it was settled law that post-
5   conviction counsel's effectiveness was irrelevant to
6   establishing cause for procedural default."  Id. (citation
7   omitted).  However, in Martinez, 132 S.Ct. 1309, the Supreme
8   Court "'recogniz[ed] a narrow exception'" to that settled
9   law.  Id. (quoting Martinez, 132 S.Ct. at 1315).  Finding
10  "the Supreme Court's development in Martinez" to be a
11  "remarkable — if 'limited,' – development in the Court's
12  equitable jurisprudence[,]" the Ninth Circuit in Lopez held
13  that the nature of the change in intervening law
14  "weigh[ed] *slightly* in favor of reopening Lopez's habeas
15  case" pursuant to Rule 60(b)(6).  Lopez, 678 F.3d at 1136
16  (internal citation omitted)(emphasis added).[12]

17      The nature of the intervening change of law here --
18  Mackey, 682 F.3d 1247 -- does not fit squarely within the
19  contours of  Gonzalez, Phelps, or Lopez.  After careful
20  consideration, though, the court finds that the nature of the
21  change of law in Mackey weighs against granting Rule 60(b)(6)
22  relief.  Mackey did not "upset or overturn[] a settled legal
23  principle as to now permit the petitioner to raise a credible
24  claim that he could *not* have previously raised."  See Gates,

25

26      [12]    But see Tilcock v. Budge, 2013 WL 2324452, at *2 (D.Nev. May 28,
    2013) (cataloging cases) ("[V]irtually every court to have examined the
27  import of Martinez in the context of a request for Rule 60(b)(6) relief has
    rejected the notion that *Martinez* satisfies Rule 60(b)(6)'s 'extraordinary
28  circumstances' requirement.")

2011 WL 6369731, at *2 (emphasis added).  Indeed, even prior
to Mackey, the Ninth Circuit, albeit not in the habeas
context, had allowed Rule 60(b)(6) relief from judgment
where, as movant Valdez is alleging, attorneys engaged in
gross negligence, virtually abandoning their clients.

     In Cmty. Dental Servs. v. Tani, 282 F.3d 1164 (9th Cir.
2002), the Ninth Circuit held that a default judgment could
be set aside pursuant to Rule 60(b)(6) where the defense
attorney "'virtually abandoned his client by failing to
proceed with his client's defense despite court orders to do
so' and deliberately deceived his client about what he was
doing (or not doing)."  Lal v. California, 610 F.3d 518, 524
(9th Cir. 2010) (quoting Tani, 282 F.3d at 1171-1172).  The
Tani Court reasoned:

> [C]onduct on the part of a client's
> alleged representative that results
> in the client's receiving practically
> no representation at all clearly constitutes
> gross negligence, and vitiat[es] the
> agency relationship that underlies our
> general policy of attributing to the
> client the acts of his attorney.

Tani, 282 F.3d at 1171.

     Extending Tani, the Ninth Circuit in Lal, 610 F.3d 518,
granted Rule 60(b)(6) relief from a Rule 41(b) dismissal for
failure to prosecute where the attorney's conduct was
strikingly similar to the attorney's conduct in Tani.  Both
were grossly negligent in virtually abandoning their clients'
cases and deliberately misleading them.  Id. at 525; see also
Madison v. First Mangus Financial Corp., 2009 WL 1148453, at

*4 (D.Ariz. Apr. 28, 2009) (internal quotation marks and
citation omitted) (granting Rule 60(b)(6) relief from
dismissal of case for failure to file a second amended
complaint, where attorney's conduct met the <u>Tani</u> gross
negligence standard in that he virtually abandoned his client
by failing to proceed with her case – a deficiency
"intensified by his failure to apprise Plaintiff of the
developments in her case and by his representations that he
would perform his responsibilities as her counsel").

Moreover, assuming for the sake of argument that <u>Mackey</u>
did announce a new rule of law in this Circuit, "it did not
change the law in a manner germane to the judgment rendered"
herein. <u>See Hamilton v. Swarthout</u>, 2012 WL 4343830, at *3
(N.D.Cal. Sept. 21, 2012).  That is because when movant
Valdez filed his Rule 60(b)(6) motion in February 2011,
"there was no Supreme Court or Ninth Circuit precedent
barring him from" arguing that attorney Kooyumjian's failure
to file the opening appellate brief constituted gross
negligence and amounted to virtual abandonment.  <u>See</u> <u>id.</u>
(Ninth Circuit decision "announce[ing] a new rule of law" as
to actual innocence "did not change the law in a manner
germane to the" petitioner because when he originally filed
his habeas petition, "there was no Supreme Court or Ninth
Circuit precedent barring him from asserting such a claim");
<u>see</u> <u>also</u> <u>Gates</u>, 2011 WL 6369731, at *3 (citations omitted)
(same).  In short, because <u>Mackey</u> did resolve an unsettled
issue of law and because Ninth Circuit and Supreme Court
precedent did not foreclose the movant's abandonment

argument, the nature of the change in law due to <u>Mackey</u> weighs against a finding of extraordinary circumstances so as to justify Rule 60(b)(6) relief.

### *ii. Diligence*

The second <u>Phelps</u> factor "considers the petitioner's exercise of diligence in pursuing the issue during the federal habeas proceedings." <u>Lopez</u>, 678 F.3d at 1136 (citation omitted). This factor cuts against reopening movant Valdez's habeas petition because, as detailed herein, he was not diligent in pursuing the issue of alleged attorney abandonment during the course of this federal habeas proceeding. To reiterate, in 2005 the movant did nothing to ascertain the status of his appeal, even though it had been pending for roughly four years and he had learned that his attorney was no longer entitled to practice law in California. After waiting another two and a half years, the movant finally contacted the Ninth Circuit regarding the status of his appeal. And, although he learned in early 2008 that his appeal had been dismissed for failure to file the opening brief, plaintiff waited another three years before filing this Rule 60(b)(6) motion. Under these circumstances, the court cannot find that the movant was diligent in pursuing his claim of attorney abandonment. Indeed, similar to <u>Gonzalez</u>, the purported change in the law wrought by <u>Mackey</u> is "all the less extraordinary" due to the movant's lack of diligence. <u>See Gonzalez</u>, 545 U.S. at 537, 125 S.Ct. 2641.

. . .

- 45 -

### ***iii.  Finality***

The third <u>Phelps</u> factor is whether granting relief from judgment under Rule 60(b)(6) "would 'undo the past, executed effects of the judgment,' thereby disturbing the parties' reliance interest in the finality of the case." <u>Phelps</u>, 569 F.3d at 1137 (quoting <u>Ritter v. Smith</u>, 811 F.2d 1398, 1402 (11th Cir. 1987)).  "Rule 60(b)(6) relief is less warranted when the final judgment being challenged has caused one or more of the parties to change his legal position in reliance on that judgment." <u>Id.</u>  In <u>Phelps</u>, because neither party changed its legal position in reliance upon the district court's dismissal of Phelps' time-barred habeas petition, the Ninth Circuit found this factor "weigh[ed] heavily in [his] favor." <u>Id.</u> at 1138.

The same could be said here.  Therefore, on the face of it <u>Phelps</u> appears to be analogous to the present case.  When the movant's petition was dismissed on appeal, as in <u>Phelps</u> "his federal case simply ended: [movant Valdez] remain[s] in prison, and the [United States] [has] stopped defending his imprisonment." <u>See</u> <u>id.</u> at 1138. As a result, as in <u>Phelps</u>, there are "no 'past effects' of the judgment that would be disturbed if the case were reopened for consideration on the merits of [Valdez's] *habeas* petition because the parties would simply pick up where they left off." <u>See</u> <u>id.</u>

But that is only one side of the coin.  There are two critical distinctions between <u>Phelps</u> and the present case which compel a finding that "the strong public interest in [the] timeliness and finality of judgments" would not be

served by granting movant Valdez's Rule 60(b)(6) motion based upon Mackey.  See Phelps, 569 F.3d at 1135 (internal quotation marks and citation omitted).  The first critical distinction is that Phelps "demonstrated more diligence than [the Ninth Circuit] could ever reasonably demand from a habeas petitioner." Id. at 1136.  Indeed, the Ninth Circuit could not "imagine a more sterling example of diligence than Phelps has exhibited." Id. at 1137.  For over a decade, at every step of the way, Phelps pursued all avenues of relief, "put[ting] forth cogent, compelling, and correct legal arguments[.]" Id.  In contrast, as previously discussed, movant Valdez was the opposite of diligent.

The second equally compelling difference between Phelps and the present case is that "entirely as a result of misfortune[,]" despite over eleven years of litigation, Phelps sat in prison "without a single federal judge ever having evaluated the substance of his petition for habeas corpus[.]" Id. at 1123.  Movant Valdez did not suffer that same misfortune; his habeas petition was decided on the merits.  A United States Magistrate Judge thoroughly considered the movant's habeas petition, ordering supplemental briefing and conducting an evidentiary hearing, during which the movant offered the testimony of two witnesses.  CR Doc. 1206 at 1.  After a thorough analysis, the Magistrate Judge recommended denying Valdez's section 2255 motion.  Movant Valdez did not file any objections, despite being given ample opportunity to do so (three months).  CR Doc. 1210 at 4:7.  Reviewing and accepting that

report, this court denied Valdez's section 2255 motion.
Based upon the foregoing, the court finds that the interest
in the finality of judgment also weighs against an
extraordinary circumstance finding.

### iv. Delay

"The fourth factor concerns delay between the finality
of the judgment and the motion for Rule 60(b)(6) relief."
Lopez, 678 F.3d at 1136 (internal quotation marks and
citation omitted).  This factor embodies the principles that
"individuals seeking to have a new legal rule applied to
their otherwise final case should petition the court for
reconsideration with a degree of promptness that respects the
strong public interest in timeliness and finality.'" Phelps,
569 F.3d at 1138.

Here, just three weeks after the issuance of Mackey, 682
F.3d 1247, movant Valdez filed his motion to supplement based
thereon.  Thus, although movant Valdez significantly delayed
in bringing his original Rule 60(b)(6) motion, the same
cannot be said of his motion to supplement.  Therefore, this
factor augurs slightly in favor of movant Valdez.  See Lopez,
678 F.3d at 1136 (petitioner moved with the requisite degree
of promptness, weighing in favor of reopening his habeas case
by filing his Rule 60(b)(6) motion within three weeks after
the issuance of Martinez, 132 S.Ct. 1309).

### v. Degree of Connection

"The fifth consideration pertains to the degree of
connection between" movant Valdez's case and Mackey, and
overlaps somewhat with the nature of the change discussed

earlier.  <u>See</u> <u>Lopez</u>, 678 F.3d at 1137 (citation omitted).
The degree of connection "factor is designed to recognize
that the law is regularly evolving." <u>Phelps</u>, 569 F.3d at
1139.  Given the common law heritage of the American judicial
system, "legal rules and principles inevitably shift and
evolve over time, but the mere fact that they do so cannot
upset all final judgments that have predated any specific
change in law." <u>Id.</u>  That is why, as the Court in <u>Phelps</u>
underscored, "the *nature* of that change is important." <u>Id.</u>
(emphasis in original).  Thus, courts are "to examine closely
the original and intervening decisions at issue in a
particular motion for reconsideration predicated on an
intervening change in the law: if there is a close connection
between the two cases, the court [will be more likely to]
f[i]nd the circumstances sufficiently extraordinary to
justify disturbing the finality of the [original] judgment."
<u>Id.</u> (internal quotation marks and citation omitted).

Closely examining <u>Mackey</u> and movant Valdez's current
theory of abandonment persuades the court that because of the
tenuous connection between the two, <u>Mackey</u> does not
constitute an extraordinary circumstance for Rule 60(b)(6)
purposes.  In the first place, this case is readily
distinguishable from <u>Phelps</u>, 569 F.3d 1120, where the Court
found the requisite close connection.  In so finding, the
Ninth Circuit relied upon the same two factors as it did in
finding that the nature of the change in law cut in favor of
a finding of extraordinary circumstances.  To repeat, the
Court in <u>Phelps</u> relied upon the fact that "the intervening

change in the law directly overruled the decision for which reconsideration [had been] sought[;]" and "the intervening precedent resolved a conflict between competing and co-equal legal authorities." Phelps, 569 F.3d at 1339 (citation omitted). Neither of those factors exists here, as discussed in conjunction with the nature of the change in law in Mackey. It necessarily follows that unlike Phelps, there is no "direct relationship" between the movant's abandonment theory herein and Mackey. See Phelps, 569 F.3d at 1339.

The necessary degree of close connection is lacking for a second, more fundamental reason. The requisite identity between Mackey and movant Valdez's current theory is missing because Mackey is distinguishable and hence inapplicable here. See Lopez, 678 F.3d at 1137 (Lopez's claim did not provide the sort of identity with Martinez favoring Rule 60(b)(6) relief because a merits review of his claim was not precluded by procedural default, as in Martinez, but by his failure to develop the factual basis of his claim under 28 U.S.C. § 2254(e)(2)); see also Tilcock, 2013 WL 2324452, at * 2 (D.Nev. May 28, 2013) (internal quotation marks omitted) ("the degree of connection between the extraordinary circumstance and the decision for which reconsideration is sought [was] completely lacking" because "[p]etitioner's claim that perjured testimony was used to convict him . . . d[id] not fall within the Martinez exception[]"). Of the many distinctions between Mackey and the present case, perhaps the most significant is timing. Petitioner Mackey first contacted the district court to inquire about the status of

his case a mere eight months after the entry of judgment against him.  <u>Mackey</u>, 682 F.3d at 1249.  Additionally, he contacted the district court a second time, after being advised of the entry of judgment against him, because he was "concern[ed] about his appellate rights[.]"  <u>Id.</u>  Given that prompt inquiry and follow-up, the Ninth Circuit had no occasion to consider, as this court has, the impact of a significant delay upon a Rule 60(b)(6) motion based upon a purported change in law.

There is also a significant distinction between the circumstances which gave rise to a finding of abandonment in <u>Mackey</u> and the present case.  Not only did Mackey's attorney fail to keep him apprised of the status of his case, resulting in the petitioner missing the deadline for filing an appeal, but he "misled" Mackey and freely admitted doing "nothing more on the case" after filing an amended § 2254 petition.  <u>Mackey</u>, 682 F.3d at 1249.  Moreover, Mackey's attorney himself informed the district court that Mackey had "been deprived of counsel in this habeas corpus proceeding through no fault of his own[,]" and that "[f]airness suggests" vacating the order dismissing Mackey's habeas petition; reinstating that proceeding and appointing counsel to represent Mackey.  <u>Id.</u> at 1250.

There are no such compelling circumstances in the present case.  The sole basis for movant Valdez's abandonment theory is that his attorney did not file an opening brief, resulting in dismissal of his habeas petition by the Ninth Circuit.  This is not a situation, as in <u>Mackey</u>, where Valdez's

attorney filed the notice of appeal and then did nothing. Slightly more than a month after filing the notice of appeal, Mr. Kooyumjian successfully moved the Ninth Circuit for modification of the briefing schedule.  <u>U.S. v. Soto-Valdez</u>, #01-15427 (9th Cir.) at 5 (April 12, 2001).  Mr. Kooyumjian was also successful in obtaining two further extensions of time in which to file the opening brief.  <u>Id.</u> at 7 and 8; <u>see also</u> Mot., exh. E thereto (Doc. 1) at 16.  And eventually, attorney Kooyumjian did file an opening brief, but it was "deficient no excerpts[.]"  <u>Id.</u> at 12 (Nov. 7, 2001).

Furthermore, there are no allegations, much less proof, as there was in <u>Mackey</u>, that Mr. Kooyumjian "'continuously . . . lied'" or  "misled" movant Valdez. <u>See</u> <u>Mackey</u>, 682 F.3d at 1249; 1253.  Rather the situation here is more akin to <u>Towery</u>, 673 F.3d 933, where the Ninth Circuit found "unpersuasive" a capital prisoner's claim of abandonment based upon his attorney's omission of "a colorable constitutional claim from his . . . amended petition."  <u>Id.</u> at 942.  In upholding the district court's finding of no abandonment, the <u>Towery</u> Court pointed out that that the petitioner made "no claim [that his attorney] performed incompetent legal work, failed to communicate with him, refused to implement his reasonable requests or failed to keep him informed of key developments in his case."  <u>Id.</u> at 944.

Movant Valdez's claim of attorney abandonment is similarly lacking, although implicit in his petition is a claim that Mr. Kooyumjian did not inform him that his appeal

had been dismissed for failure to file an opening brief.
Nevertheless, on this limited record, the court cannot find
that Kooyumjian's singular failure of filing a deficient
appellate brief resulted in "inexcusabl[e] and gross
neglect[] . . . amounting to attorney abandonment[.]" <u>See</u>
<u>Mackey</u>, 682 F.3d at 1253 (internal quotation marks and
citations omitted).

     In addition, the scant proof before this court undermines
movant Valdez's claim that Mr. Kooyumjian abandoned him by
not filing an opening brief.  At least as of March 2005, well
after the dismissal of his appeal, the movant still had an
attorney-client relationship with Mr. Kooyumjian, as can be
seen from the former's letter to the State Bar of California.
In response to the movant's March 2005 inquiry regarding Mr.
Kooyumjian, the State Bar closed the matter because the
movant "indicated that Mr. Kooyumjian [wa]s *still*
*representing*" him.  Mot., exh. G thereto (Doc. 1) at 18
(emphasis added).  It explained that the State Bar "does not
pursue disciplinary investigations when an *ongoing attorney-*
*client relationship* exists between the complainant and the
attorney against whom the complaint has been filed."  <u>Id.</u>
(emphasis added).  Under these circumstances, obviously,
movant Valdez has not shown severance of the attorney-client
relationship  – at least not as of March 2005, and
necessarily then, not earlier, in 2001, when Mr. Kooyumjian
filed a deficient appellate brief.

     While the court certainly does not condone Mr.
Kooyumjian's conduct, it cannot find that his actions or

inactions were sufficiently egregious to constitute abandonment, as occurred in <u>Mackey</u>.  On this limited record, at most, Mr. Kooyumjian's singular omission of filing a deficient brief "suggest[s] simple negligence[]" –– not abandonment.  <u>See</u> <u>Holland</u>, 130 S.Ct. at 2564 (counsel's failure to timely file petitioner's petition and ignorance of the limitations period "suggest[ed] simple negligence[]").  What is more, "a federal habeas petitioner[,]" such as movant Valdez, "who as such does not have a Sixth Amendment right to counsel . . . is ordinarily bound by the attorney's negligence, because the attorney and the client have an agency relationship under which the principal is bound by the actions of the agent.".  <u>See</u> <u>Mackey</u>, 682 F.3d at 1253 (internal quotation marks and citation omitted).  Nothing on this record convinces the court, even in light of <u>Mackey</u>, to depart from that rule here.  Thus, due to the differences between <u>Mackey</u> and the present case, the necessary degree of connection between the two is missing.  Consequently, this factor also militates against a finding that <u>Mackey</u> is an extraordinary circumstance entitling movant Valdez to Rule 60(b)(6) relief.

### *vi.  Comity*

The final <u>Phelps</u> factor, "the need for comity between the independently sovereign state and federal judiciaries[,]" 569 F.3d at 1139, does not come into play here because movant Valdez is a federal prisoner.

After "intensively balanc[ing]" the <u>Phelps</u> factors, the court finds that movant Valdez has not established that

<u>Mackey</u> constitutes an "extraordinary circumstance" justifying Rule 60(b)(6) relief from judgment.  <u>See</u> <u>Phelps</u>, 569 F.3d at 1133.  Four of those factors weigh against such a finding – the nature of the change in law, the movant's lack of diligence, the strong interest in finality of judgments, and the lack of a close connection between <u>Mackey</u> and the movant's abandonment theory.  One factor – the short delay between the time <u>Mackey</u> was decided and the movant's bringing that decision to this court's attention – slightly favors an extraordinary circumstance finding.  Comity, the last <u>Phelps</u> factor, is neutral.

The court's conclusion is not merely the result of a mechanical application of the <u>Phelps</u> factors though.  At all times it has been highly cognizant that, at bottom, "Rule 60(b)(6) is a grand reservoir of equitable power."  <u>See</u> <u>Phelps</u>, 569 F.3d at 1133; and 1135 (internal quotation marks and citation omitted). In the present case, as the <u>Phelps</u> analysis has shown, the equities weigh against reopening a more than decade old judgment.  And, these factors "including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts[,]" compel a finding that <u>Mackey</u>, 682 F.3d 1247, is not an intervening change in law tantamount to an extraordinary circumstance so as to allow relief from judgment in this case.  <u>See</u> <u>id.</u> at 1133 (internal quotation marks and citation omitted).  Thus, on this record, the court is not at liberty to "use [the] provisions of Rule 60(b) to circumvent the strong public interest in [the]

timeliness and finality of judgments."  Id. at 1135 (internal

quotation marks and citation omitted).

To summarize, albeit for different reasons, movant Valdez

cannot rely upon Maples, 132 S.Ct. 912, Martinez, 132 S.Ct.

1309, or Mackey, 682 F.3d 1247, to establish extraordinary

circumstances justifying relief from judgment pursuant to

Rule 60(b)(6).

### III.  All Writs Act

As an afterthought, in a footnote in his objections to

the Magistrate Judge's R & R, movant Valdez asserts that this

court has the authority under the All Writs Act, 28 U.S.C.

§ 1651, "to provide a remedy for the relief requested."

Obj. (Doc. 13) at 6.  Movant Valdez offers no basis

whatsoever for the granting of such extraordinary relief.

Therefore, this aspect of the movant's petition fails as

well.

### IV.  Motion for Disposition

The court's rulings herein render moot petitioner's

"Motion for Disposition on Pending Motion under Rule

60(b)(6)" (Doc. 18). Accordingly, the court hereby **DENIES**

such motion.

### Conclusion

To conclude, after conducting this de novo review, the

court finds no merit to any of movant Valdez's objections to

the Magistrate Judge's Report and Recommendation (Doc. 12).

The court further finds that movant Valdez's Rule 60(b)(6)

motion is an impermissible second or successive habeas

petition, over which this court lacks jurisdiction.  Even if

there were jurisdiction to entertain Valdez's Rule 60(b)(6) motion, this court would, nonetheless, deny it because such motion was neither brought within a reasonable time; nor is it predicated upon a showing of extraordinary circumstances. Accordingly, the court hereby **ORDERS** that:

(1) United States Magistrate Judge Anderson's Report and Recommendation (Doc. 12) is **ADOPTED**; and accordingly,

(2) Petitioner Castulo Soto-Valdez's "Motion for Relief from Judgment Under Rule 60(b)(6) (Doc. 1) is **DENIED**;

(3) Petitioner Castulo Soto-Valdez's "Motion to Supplement Pending Rule 60(b) Motion with New Decision by the United States Supreme Court that Would Support Petitioner's Rule 60(b) Motion" (Doc. 11) is **GRANTED** to the extent that the Court considered petitioner's arguments therein; and

**IT IS FURTHER ORDERED** that:

(4) Petitioner Castulo Soto-Valdez's "Motion to Supplement Pending Motion Under Rule 60(b)(6) with Recent Circuit Law" (Doc. 14) is **GRANTED** to the extent that the Court considered petitioner's arguments therein; and

(5) Petitioner Castulo Soto-Vadlez's "Motion for Disposition on Pending Motion Under Rule 60(b)(6) (Doc. 18) is **DENIED** as moot.

DATED this 18th day of September, 2013.

Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record and defendant/movant *pro se*